[Decided February 2, 1888.]

M. D. WELLS, H. J. McFARLAND, AND B. R. WELLS, PARTNERS, TRADING AS WELLS & CO., ATTACHING CREDITORS OF A. SIMON, MORTGAGOR, ABRAHAM SIMON AND SARAH SIMON, MORTGAGORS, *v.* SARAH McMAHON, MORTGAGEE.

FRAUDULENT CONVEYANCE—AGENCY—KNOWLEDGE OF AGENT BINDING ON PRINCIPAL—MORTGAGE.—Knowledge by the attorney of a mortgagee who makes the loan, at the time of taking the mortgage, that it was given by the mortgagor to hinder and defraud his creditors, or knowledge of facts which would have disclosed the intent, if ordinary diligence had been used, will render the mortgage void as to the creditors, though the mortgagee was ignorant of any such purpose, and the agent was innocent of any intent to conspire in the fraud. ALLYN, J., dissenting.

APPEAL from the District Court holding terms at Tacoma. Second District.

Sarah McMahon, mortgagee, sued Simon and Simon, the mortgagors, to foreclose her mortgage given to secure a note made by the mortgagors to the mortgagee. M. D. Wells & Co. were joined as defendants, and claiming as attaching creditors an interest adverse to plaintiff in the mortgaged property. The mortgagors filed separate answers, each attacking the validity of the mortgage on account of fraudulent representations alleged to have been made by the agent of the mortgagee. M. D. Wells & Co., attaching creditors, in their answer, alleged among other things, in substance, that said mortgage was fraudulently executed by the mortgagors, by the procurement of plaintiff's agent and attorney, to enable the mortgagors to fraudulently conceal the property from their creditors, and to hinder, delay, and defeat the collection of their debts, and that the mortgage was given for a much larger amount than that advanced for or on account of plaintiff; and that said agent and attorney had full knowledge and notice of the claims and rights of the attaching creditors, when the mortgage debt was created, and procured the mortgage to be executed to defeat their claims. The plaintiff, in reply,

denied all material allegations in the several answers. Several other issues were formed, tried, and decided in the court below which are not material to the points decided by the Supreme Court. The only finding of fact in the District Court on the question of fraud was as follows:

"That said mortgage was negotiated and taken by the plaintiff by and through her said agent and attorney, in good faith, and without any intent or design on the part of the plaintiff or her agent to hinder, delay, or·defraud any creditor or creditors of said Abraham and Sarah Simon (the mortgagors) or either of them, and there is no evidence to show that any creditor of said Abraham Simon was defrauded."

Plaintiff had judgment, from which the mortgagors and the attaching creditors appealed.

*Mr. Elwood Evans,* and *Mr. W. A. Reynolds,* for the Appellants M. D. Wells & Co.

A mortgagee is bound by the knowledge of an agent of the mortgagor's fraudulent intent; as also by the participation by said agent in the mortgagor's fraud. The notice to agent is notice to the principal, if the agent comes to the knowledge while he is acting for the principal. (Bigelow on Fraud, 361, 362; *The Distilled Spirits,* 11 Wall. 356; *U. S. Bank* v. *Davis,* 2 Hill, 451–465; Wade on Notice, 31–33;. *Bierce et al* v. *Red Bluff Hotel Co. et al.,* 31 Cal. 161; *Allen* v. *McCalla,* 25 Iowa, 454, 96 Am. Dec. 56; *Haven* v. *Snow,* 14 Pick. 33.) Appellee's agent, while managing her business before and at the time of negotiating in her behalf for the note and mortgage from the Simons, had acquired the knowledge of Abraham Simon's insolvency; from such knowledge he denounces said Simon as dishonest. That knowledge of the agent is the knowledge of Sarah McMahon, the principal, and she is chargeable with the fraud of her agent. (Am. and Eng. Encyclopedia of Law, vol. 1, title "Agency," pp. 417, 418; Bump on Fraudulent Conveyances, pp. 199–206; Story on Agency, 6th ed., secs. 451, 452; *Sandford* v. *Handy,* 23 Wend. 260; *Lee* v. *The Village of*

*Sandy Hill,* 40 N. Y. 448; *Griswold* v. *Haven,* 25 N. Y. 595, 82 Am. Dec. 380.)

*Mr. Thomas Carroll,* and *Mr. James Ashton,* for the Appellee.

Counsel contended that the appellee personally had no knowledge of the matters and affairs between her agent and the mortgagors, nor of those between the mortgagors and the attaching creditors, nor of those between the latter and her agent; all of which were foreign to her loan and mortgage, and were never assented to by her expressly or impliedly, and of which she never had any knowledge. That the above authorities cited by the appellant, to the effect that the knowledge of the agent was the knowledge of the principal, and that, therefore, she was liable, were founded upon facts and circumstances entirely different from the case at bar.

Mr. Justice TURNER delivered the opinion of the court.

The question in this case is whether the mortgage for $700, given by Abraham Simon and Rachel Simon, his wife, to the appellee, is void as against creditors of the said Abraham Simon, because made with intent to hinder, delay, or defraud creditors, of which intent the appellee had notice.

The appellee, in loaning the money to Simon which said mortgage secured, acted by and through her agent at Tacoma, and, consequently, was bound by notice which came to him.

The only finding of the trial court on the question of fraud was as follows:

"That said mortgage was negotiated and taken by this plaintiff by and through her said agent and attorney, in good faith, and without any intent or design on the part of plaintiff or her said agent to hinder, delay, or defraud any creditor or creditors of the said Abraham and Sarah Simon, or either of them, and there is no evidence tending to show that any creditor of said Abraham Simon was defrauded."

This finding did not respond fully to the issues made, and

it ignored vital facts proven, which required different conclusions of law from those reached. The answer charged the agent of the appellee with actively conspiring with Abraham Simon to defraud his creditors, and particularly to defraud the appellant.

The evidence did not sustain this charge, but the answer called for a finding on the question whether it was any part of Simon's purpose, in negotiating the $700 loan, to hinder, delay, or defraud his creditors; and whether the agent of the appellee had such knowledge or means of knowledge of that intent as, under the principles of law applicable to such cases, would postpone his principal's mortgage to the lien of the appellant's attachment.

Findings ought to have been made upon these questions, and upon both ought to have been against the appellee.

After reading the testimony carefully we are of the opinion that one purpose of Simon in borrowing the money from the appellee, and securing the same by mortgage, was to make it difficult for his creditors to reach his property, by incumbering the same, and by getting as much of it into cash as possible, and putting the latter into his pocket. We are also of opinion that the agent of the appellee was made acquainted with facts during the negotiations for the loan sufficient to enable him to know the intent of Simon in the matter, if he had followed the disclosures up with the diligence which the law exacts of one dealing with a failing creditor. He was doubtless impressed with his duty to his principal to make advantageous loans for her, and lost sight, if he ever knew, of the obligations which the law imposed upon him in the interest of the general creditors of the man with whom he was dealing. However innocent he may have been, · and we impute to him no wrong whatever, the law charges him with all that he might have known concerning Simon's purpose by the use of ordinary diligence, and the law imputes to his principal all that he knew or ought to have known.

Assuming, then, the fraudulent intent of Simon in the premises, and the knowledge of that intent by the agent of

the appellee, there is no room for controversy as to the law of the case. The mortgage made by Simon to the appellee was fraudulent and void as against the creditors of Simon.

The judgment of the lower court ought to be vacated, and judgment should be entered here granting the relief prayed by appellants in their answer, to wit: that the lien of appellee's mortgage be declared inferior to the lien of their attachment, and it is so ordered.

JONES, C. J., concurred.

Mr. Justice ALLYN dissented, as follows:

The appellee Sarah McMahon brought suit for foreclosure in the District Court at Tacoma, on a mortgage made by A. Simon and wife to appellee, February 28, 1885, to secure a note for $700, made at that date to her. The appellants. M. D. Wells & Co. were made parties defendant, as having some lien or claim to the mortgaged premises.

The prayer is for the usual relief in such cases. The defendant Simon denies having executed the note or mortgage, and denies receiving the sum claimed of $700.

There are some other denials of Simon, which are included in the separate answer of M. D. Wells, appellant herein, and will be referred to in connection with the defense and claim of said Wells & Co.

M. D. Wells & Co., denying the claim of appellee, assert that they have a paramount claim to this mortgaged property, superior to the mortgagee.

They allege that James M. Ashton was the attorney in fact of the mortgagee, and was at the time the attorney of Simon and wife, and that he conspired with said Simon to hinder and delay the creditors of Simon by the making of said mortgage, and particularly to hinder and delay this indebtedness due M. D. Wells & Co., as creditors, which claim was then in the hands of James M. Ashton, as the attorney of said Wells & Co.; all of which the mortgagee well knew.

The above are the material questions upon which the case was tried below and presented here. They further say they have a judgment, and by reason of the above facts said

mortgage is fraudulent, and such judgment is superior, etc. The reply denies all the material facts.

The court below found for appellee and gave a decree foreclosing the mortgage as prayed.

That the attorney of Mrs. McMahon, the mortgagee, was James M. Ashton, and that he had at various times acted as attorney for Simon; that through him the latter negotiated the mortgage in controversy and got the amount claimed; and also that he received the claim of Wells & Co., about the time of closing negotiations with Simon, and very soon turned the claim over to another attorney, and completed the negotiations for Simon and Mrs. McMahon, are not seriously disputed.

The evidence of Simon is that Ashton had him sign the mortgage without reading, on the statement that there would thus be less for his other creditors; and Mrs. Simon says that Ashton told her the $900 mortgage of Simon insured him, Simon.

The evidence of Simon is much weakened by his evident animus and purpose to injure Ashton, apparently because of the latter having compelled him to pay $200 to Cohn, Mickelsburg & Co.

Simon's testimony is also weakened by the apparent effort to prove he did not execute the mortgage or understand it, which the other evidence clearly refutes; and further, by the attempt on his part to take advantage of a mistake made by the bank in connection with the $200.

These and other facts lead us to place very little reliance on the testimony of defendant Simon, and this is evidently the view of the court below, from the findings. It is in evidence that during a period of several days negotiations were pending between Ashton, attorney, and Simon, for the loan; and that Simon, calling at the other's office, closed the negotiations at or about the very time the attorney is informed that Wells & Co. had sent him an account against Simon for collection.

There is no evidence that Wells & Co. had been clients of Ashton; on the contrary, their letters show that they sent him this claim through a directory reference.

The evidence is clear that Ashton had the claim of Cohn, Mickelsburg & Co. against Simon for some time, and at this time; and also that he had entered into negotiations with Simon to make the loan for Mrs. McMahon, and also to secure the claim of Cahn, Nickelsburg & Co., and that this was some time before he had or knew of the Wells & Co. claim. If this is so, his first duty was to those parties for whom he was acting at the time of the receipt of the Wells & Co. claim; and to the latter he owed a duty secondary to these.

To have secured the claim of Wells & Co. by attachment or otherwise would have been a breach of his duty to McMahon and Cahn, Nickelsburg & Co. To have put them in with the other in the mortgage (which he might not have have been able to do) would have largely reduced the amount realized by his older clients. The position was full of embarrassment; he might have returned the claim to Wells & Co. with perfect propriety, but he turned it over to another local attorney, and thus saved appellants at least two weeks of time, which (whether of any value or not in this case) is at least to be considered when the good faith of the attorney is being considered. Ashton admits that he thought the man "slippery," "not very solvent," and that he knew from Simon that other creditors were pressing him, and if he did not get in early he might lose Cohn, Mickelsburg & Co.'s debt.

This is not sufficient to sustain a charge of fraud upon the other creditors. In cases of this kind, even if the debtor was in failing circumstances, "the race is to the swift," and the attorney of Cohn, Mickelsburg & Co. had the right to secure them or his personal claim (which latter is, however, too small to have much weight); and he had the further right to care for the interests of Mrs. McMahon, and conclude alone in her interest on negotiations previously begun, provided those things were done in good faith and not in fraud, or not mainly for the purpose of enabling him to cheat his creditors.

It is an elementary rule that fraud is never presumed; in

fact, the contrary is the truth. The circumstances of this case must be such as to produce a moral certainty of guilt, or the findings below must stand; that is to say, that the attorney's main object was to aid Simon in a fraud upon his creditors; and must exclude entirely the idea of his having acted properly and in the interests of his older clients. The court below did not consider that Wells & Co. had made such a case as these rules require; nor do I. I cannot agree with the majority of my brothers.

The judgment below should be affirmed.